LUBIN & ENOCH, P.C.
Nicholas J. Enoch (016473)
Emily A. Tornabene (030855)
Stanley Lubin  (003076)
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: Nick@lubinandenoch.com

SEHAM, SEHAM, MELTZ & PETERSEN, LLP
Nicholas Granath, Esq. (MN 0198729; *pro hac vice*)
2915 Wayzata Blvd.
Minneapolis, MN 55405
Telephone:  (612) 341-9080
Facsimile: (612) 341-9079
Email: Ngranath@ssmplaw.com

SEHAM, SEHAM, MELTZ & PETERSEN, LLP
Lucas K. Middlebrook, Esq. (LM7111; *pro hac vice*)
445 Hamilton Avenue, #1204
White Plains, New York 10601
Telephone: (914) 997-1346
Facsimile: (914) 997-7125
Email: lmiddelbrook@ssmplaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AIRCRAFT MECHANICS FRATERNAL ASSOCIATION<br>          Plaintiff,<br><br>     v.<br><br>SOUTHWEST  AIRLINES  CO., a Texas corporation<br>          Defendant. | Case No. 2:16-cv-04435-GMS<br><br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br>**(Jury Trial Demanded)** |

# I. <u>SUMMARY.</u>

1.      This action is brought under the Railway Labor Act ("RLA" or "Act"), 45 U.S.C. § 151 *et seq.*, to remedy "major dispute" violations of the RLA by defendant Southwest Airlines, Co. and seeks declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, and the RLA.

# II. <u>JURISDICTION AND VENUE.</u>

2.      This Court has subject matter jurisdiction over this action.

3.      Subject matter jurisdiction over this action arises under 28 U.S.C. § 1331 because the case arises under federal law, the RLA, under which plaintiff asserts a federal claim.

4.      In addition, jurisdiction also arises pursuant to 28 U.S.C. § 1337, as this is an action arising under a statute that regulates commerce and/or protects trade and commerce against restraints, namely, the RLA.

5.      Plaintiff's claims are also brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and seek a declaration as to the parties' rights and obligations under the RLA.

6.      Plaintiff is entitled to such a declaration because the instant dispute is an actual and existing controversy.

7.      Venue is properly laid in the United States District Court for the District of Arizona.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in all Counts arose in this district and because defendant has and continues to conduct regular business in Maricopa County of the State of Arizona and employs hundreds of plaintiff's members in this district.

9.      This Court has personal jurisdiction over defendant because of service of process on defendant within the territorial confines of this state, in which this Court sits.

### III. **PARTIES.**

10.     Plaintiff, the Aircraft Mechanics Fraternal Association ("AMFA" or "union") is a "representative" or "labor union" within the definition of the RLA, 45 U.S.C. § 151, Sixth.

11.     AMFA was certified by the National Mediation Board ("NMB") on January 27, 2003 (30 NMB No. 27; CASE NO. R-6919), following a contested representation election, to be "duly designated and authorized to represent for the purposes of the RLA, as amended, the craft or class of Mechanics and Related Employees, employees of Southwest Airlines Company, its successors and assigns."

12.     AMFA is currently certified to represent the craft and class of "Mechanics and Related Employees" ("Mechanics") at Southwest Airlines Co., which includes Aircraft Mechanics, Aircraft Inspectors, Ground Support Equipment Mechanics, Plant Maintenance Mechanics, Maintenance Controllers, Technical Instructors, Appearance Technicians and Facilities Maintenance Mechanics.

13.     AMFA has standing in this matter because it is the certified representative of the Mechanics and Related craft and class of Employees at Southwest Airlines Co. and is a party to a collective bargaining agreement with defendant and is currently in collective bargaining with Southwest Airlines Co.

14.     Defendant Southwest Airlines, Co. ("Southwest" or "company" or "carrier") is a domestic for-profit corporation, organized and existing under the laws of the State of Texas and has its offices and its principal place of business at 2702 Love Field Drive, Dallas, Texas 75235.

15.     Southwest is a "common carrier" by air engaged in interstate and foreign commerce under 42 U.S.C. § 1981 and is subject to the provisions of the RLA, 45 U.S.C. § 151, First.

16.     Southwest does business in Phoenix, Arizona where it conducts regularly scheduled flights and employs hundreds AMFA members.

17.     Defendant Southwest Airlines may be served via its registered agent for service in this District.

## IV. <u>FACTS.</u>

**1)     <u>The Parties Are Engaged In A "Major Dispute" Over The Formation Of A Collective Bargaining Contract, Pursuant To The Railway Labor Act.</u>**

18.     AMFA and Southwest are parties to a collective bargaining agreement ("CBA" or "contract") negotiated to cover the period from August 16, 2008 through August 16, 2012, that is expressly "made and entered into in accordance with the provisions of Title 2 of the Railway Labor Act …".

19.     In 2012 the parties commenced the current round of collective bargaining for a new contract covering Aircraft Mechanics, Aircraft Inspectors, Ground Support Equipment Mechanics, Plant Maintenance Mechanics, Maintenance Controllers and Technical Instructors, which continues to the present day.

20.     The RLA and interpretive case law under it broadly define two types of disputes that may arise between covered employers and the labor organizations representing their employees. 45 U.S.C. § 151(a)(4) and (a)(5).

21.     Disputes "concerning rates of pay, rules, or working conditions" within the meaning of 45 U.S.C. § 151a(4) have been denominated by the United States Supreme Court as "major" disputes. *Elgin, Joliet and Eastern Railway Company v. Burley,* 325 U.S. 711, 723 (1945).

22.     A "major" dispute concerns contract formation, or the amendment of a collective bargaining agreement, and the resolution of such disputes is governed by § 6 of the RLA, 45 U.S.C. §§ 156, 181*; Western Airlines, Inc. v. International Brotherhood of Teamsters*, 480 U.S. 1301, 1302 (1987).

23.     The RLA establishes "major" dispute resolution procedures, including, but not limited to, negotiation between the parties, mediation before the NMB, voluntary interest arbitration, and "self help" following release by the NMB. *Consolidated Rail Corporation v. Railway Labor Executives' Association,* 491 U.S. 299 (1989).

24.     In contrast, where a carrier asserts a contractual right to take contested action the ensuing dispute is denominated "minor" under the RLA, provided the action is arguably justified by the terms of the parties' collective bargaining agreement. A carrier cannot assert a minor dispute where it asserts frivolous or insubstantial contractual arguments in defense of its unilateral action.  Where such frivolous or insubstantial contractual defenses are asserted, the carrier's unilateral action constitutes a major dispute. *Consolidated Rail Corporation v. Railway Labor Executives' Association,* 491 U.S. 299, 306 (1989).

25.     Within the meaning of the RLA, AMFA and Southwest are currently engaged in a "major" dispute, namely collective bargaining to amend the current contract pursuant to the RLA's dispute resolution process.

26.     Pursuant to this bargaining the parties each have negotiating or bargaining committees that have met in face-to-face bargaining sessions in: Dallas, Texas; San Antonio, Texas; Phoenix, Arizona; Washington, D.C.; Chicago, Illinois and Kansas City, Missouri.

27.     Currently, collective bargaining is conducted under the auspices of the NMB through its assigned Mediator.

**2)     The Railway Labor Act Imposes A Duty On Southwest To Bargain In Good Faith.**

28     Under Section 2 (First) of the RLA, i.e. 45 U.S.C. § 152, First, Southwest is legally required to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions …"

29.     Under Section 2 (Second) of the RLA, 45 U.S.C. § 152, Second, Southwest is legally required to consider all "disputes between" it and its "employees" and "if possible" to decide them "with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute."

30.     Implicit in this 45 U.S.C. § 152, First and § 152, Second requirement is a

duty to bargain in good faith.

31.     As compared to the duty to bargain in good faith under the National Labor Relations Act ("NLRA"), "[the RLA] imposes a higher standard of negotiation efforts…" by its creation of a legal obligation that the parties exert "every reasonable effort" to reach an agreement. *Japan Air Lines Co., Ltd. v. Int'l Ass'n of Machinists and Aerospace Workers,* 389 F. Supp. 27, 34 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 46 (2d Cir. 1976).

32.     The standard employed in determining what type of conduct constitutes a violation of the duty to bargain in good faith is "whether the party charged with violation of its duty has merely gone through the motions of compliance with the [RLA's] required procedures without a desire to reach an agreement." *Japan Air Lines Co., Ltd. v. Int'l Ass'n of Machinists and Aerospace Workers,* 389 F. Supp. 27, 34 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 46 (2d Cir. 1976).

33.     Whether this standard has been met "must be determined by the whole of the party's conduct at the bargaining table." *Kennedy v. Long Island Rail Road Co.,* 319 F.2d 366 (2d Cir. 1963), *cert. denied,* 375 U.S. 830 (1963).

34.     A party's unlawful intent not to reach an agreement can be demonstrated where the party was "[e]ngaged in the mere pretense of negotiation, [or] adopted evasive and dilatory tactics that revealed an intent to wait until the union acceded to its demands." *Association of Flight Attendants v. Horizon Air Industries, Inc.,* 976 F.2d 541, 545 (9th Cir. 1992) (internal quotations omitted).

35.     The Supreme Court has held that the requirement of 45 U.S.C. § 152, First is a legal obligation that is judicially enforceable. *Chicago and North Western Railway Co. v. United Transportation Union, 402 U.S. 570, 91 S. Ct. 1731 (1971).*

3)     **The Railway Labor Act Imposes A Duty On Southwest To Treat With AMFA, The Mechanics' Representative.**

36.     Under Section 2 (Ninth) of the RLA, 45 U.S.C. § 152, Ninth, Southwest is legally required to "treat with the representative so certified [by the NMB] as the

representative of the craft or class …" over negotiations of rates of pay, rules and working conditions.

37.    A carrier's belief, even if in good faith, that an organization is no longer supported by a majority of employees is not sufficient to relieve the carrier of its duty to treat. *International Ass'n of Machinists v. Alitalia Airlines*, 753 F.2d 3 (2d Cir. 1985).

38.    The duty to treat is enforceable in federal court by injunctive relief. *Virginian Ry. v. System Fed'n No. 40*, 300 U.S. 515, 549-53 (1937).

**4)    The Railway Labor Act Imposes A Duty On Southwest Not To Interfere With The Designated Representative Of Its Mechanics, AMFA.**

39.    Under Section 2 (Third) and (Fourth) of the RLA, 45 U.S.C. § 152, Third, and Fourth, a carrier is prohibited from "in any way" interfering with the choice of representatives of its employees, or to "interfere in any way with the organization of its employees."

40.    Federal courts have jurisdiction to remedy violations of § 152, Third, and Fourth in both pre and post certification situations, where necessary to enforce the protections of the RLA. *Texas & N.O. R.R. v. Railway & Steamship Clerks*, 281 U.S. 548 (1930); *Trans World Airlines. v. Flight Attendants*, 489 U.S. 426, 440, 441 (1989) (*quoting Switchmen's Union v. NMB*, 320 US 297 (1943)).

**5)    Southwest Is Bargaining In Bad Faith:**

**a)    Southwest's Take-It-Or-Leave-It And Surface Bargaining:**

41.    Since July 1, 2016, and prior thereto, in collective bargaining with AMFA, Southwest has engaged in take-it-or-leave-it and surface bargaining tactics calculated to, or that have the foreseeable effect of, avoiding agreement, imposing delay or cost, displaying the mere pretense of bargaining, and implying an unwillingness to ever reach agreement with AMFA, as follows:

42.    On August 16, 2016, in or from Dallas, defendant's bargaining committee

chairperson and Vice President of Labor Relations, Mike Ryan ("Ryan"), sent a mass-mailing letter to all AMFA members about mandatory subjects of bargaining entitled "AMFA Mediation."

43. Ryan's August 16 letter overtly threatened AMFA members with a refusal to *ever* come to agreement with the Mechanics' chosen representative, AMFA, absent its acquiescence to defendant's demands to surrender to take-it-or-leave-it positions by stating, in part, that, "we fear, sadly, that absent some change in the attitude of the AMFA bargaining committee*, there is no agreement that can be reached*" [emphasis added] and "it would be foolhardy to describe the current situation as anything but bleak." This stated or implied an unwillingness to ever reach agreement, or to bargain in good faith, with the Mechanics' craft or class chosen representative, AMFA.

44. In a bargaining session in Dallas on August 11, 2016, defendant suggested to the AMFA bargaining committee that there would be no contract unless AMFA acquiesced to across-the-board demands, when Lead Company negotiator Mike Ryan stated that (or in words to the effect of), "In all seriousness ... I am having a hard time seeing where these negotiations go after four years … *none of this* [company offer] *on the table today* [is] *available without our asks*." [emphasis added]. This stated or implied an unwillingness to ever reach agreement, or to bargain in good faith, with the Mechanics' craft or class chosen representative, AMFA.

45. In a bargaining session in Dallas on August 9, 2016, defendant again communicated to the AMFA bargaining committee that there would be no contract unless AMFA acquiesced to defendant's demands when Lead Company negotiator Mike Ryan stated that (or in words to the effect of), "I think the floor will understand the asks with the money I am putting on the table I *must have these asks*." [emphasis added]. This stated or implied an unwillingness to ever reach agreement, or to bargain in good faith, with the Mechanics' craft or class chosen representative, AMFA.

46. Moreover, in the bargaining session in Dallas on August 9, 2016, defendant

presented to the AMFA bargaining committee an economic package as a take-it-or-leave-it proposal tied to the rest of the defendant's concessionary demands to 'gut' – or virtually surrender – contract language protecting jobs on U.S. soil, secured over years of past bargaining (i.e. language protecting jobs in fact, as well as in the informed, subjective assessment of AMFA's experienced bargaining committee).

47.     Moreover, the above conduct is a continuation of a pre-existing pattern of earlier conduct *before* July 1, 2016, wherein in Southwest engaged in take-it-or-leave-it and surface bargaining tactics all calculated to, or that had the foreseeable effect of, avoiding agreement, implying an unwillingness to come to agreement with AMFA, imposing delay or cost, and displaying the mere pretense of bargaining, as follows:

48.     In a bargaining session on April 14, 2016, in Chicago, defendant suggested to the AMFA bargaining committee that there would be no contract at all unless AMFA acquiesced to defendant's take-it-or-leave-it demands when Lead Company negotiator Mike Ryan stated that (or in words to the effect of), "My message to you is that I need my needs to build your economic package … For me to be able to put [a] number on the Board I need a feel for your gives … *We are not going to get very far then* …" [emphasis added]

49.     By such take-it-or-leave-it posturing and patent surface bargaining tactics the intent of defendant is to undermine AMFA's bargaining representatives, undermine the chosen representatives of the Southwest Mechanics, and force AMFA to acquiesce to defendant's demands for concessionary contract terms that are in the interests of defendant while at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives.  This is all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.  Southwest's abdication of its obligation to engage in every reasonable effort to reach an agreement communicates and implies that it is not willing to continue negotiating with AMFA's chosen representatives.

50.     To remedy such irreparable harm, there is no other avenue available to

resolve this dispute, or to avoid industrial strife, than this Court.

**b)** **Southwest's Regressive Bargaining Or Take-Back Agreements Deployed:**

51.    Since July 1, 2016, and prior thereto, in collective bargaining with AMFA, Southwest has engaged in regressive bargaining, or take-back agreement tactics, all calculated to, or with the foreseeable effect of, avoiding agreement or imposing delay or cost, displaying the mere pretense of bargaining, and implying, if not announcing, an unwillingness to ever come to agreement with AMFA, as follows:

52.    In a bargaining session in Dallas on November 2, 2016, in response to compromise offers by the AMFA bargaining committee on Article 2 language concerning outsourcing protection, defendant refused any discussion of compromise, insisted on its own proposal as a "must have item." reverted back to its original proposal, refused any further meaningful discussion – all without justification of economic necessity, such as changed economic circumstances, or profitably.

53.    In bargaining sessions since July 1, 2016, defendant had similarly demanded AMFA acquiesce to its concessionary demands on issues of Inspector backfill, paid rest, down-lines, and ETOPS.   Moreover, when the AMFA bargaining committee offered compromise proposals, defendant reverted back to its original proposals and refused any further meaningful discussion – all without justification of economic necessity or profitably.

54.    In addition, as part of a continuation of earlier conduct, before July 1, 2016, Southwest engaged in regressive bargaining or take-back agreement tactics calculated to, or that had the foreseeable effect of, avoiding agreement, imposing delay or cost, displaying the mere pretense of bargaining, and implying an unwillingness to ever come to agreement with AMFA, as follows:

55.    In a bargaining session on April 16, 2014, in Phoenix, defendant informed AMFA's bargaining committee that contract language that the parties had earlier agreed to

in February of 2014, concerning training hotels, was no longer acceptable to defendant. No reasonable justification for this regression was offered, much less existed.

56.     In a bargaining session on November 12, 2014, in Dallas, defendant informed AMFA's bargaining committee that contract language that the parties had earlier agreed to in Article 9 regarding limitations on work performed by "bump-up" supervisors was no longer acceptable to defendant in its entirety because "the operators" – who were not even present at the bargaining table at the time of agreement – had "found too many holes." This putative justification was specious.

57.     By such regressive bargaining or take-back agreement tactics the true purpose of defendant is to undermine AMFA's bargaining representatives, undermine the chosen representatives of Southwest Mechanics, force AMFA to acquiesce to defendant's demands for concessionary contract terms, all in the interests of defendant and at the expense of AMFA members, and contrary to the compromise proposals of AMFA bargaining representatives – to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.   Further, Southwest's abdication of its obligation to engage in every reasonable effort to reach an agreement effectively communicates and implies that it is not willing to continue negotiating in good faith with its Mechanics' chosen, elected representatives, AMFA.

58.     To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

   **c)**   <u>**Southwest's Coming Unprepared To Negotiation Sessions:**</u>

59.     As part of a continuation of earlier conduct, before July 1, 2016, Southwest engaged in the tactic of asserting that it was unprepared to negotiate regarding contract items despite the parties' schedule of these items for negotiation well in advance of the meeting date.  This tactic was calculated to, or had the foreseeable effect of, avoiding agreement, imposing delay or cost, and displaying the mere pretense of bargaining, as

follows:

60.     On November 12, 2014, defendant informed AMFA's bargaining committee that it had to undo a tentative agreement that had already been reached between the parties earlier, which related to the selection process for temporary supervisors, because the operators – who were not even present at the table – could not agree to the language.  No changed circumstances justified this bogus withdrawal.

61.     On January 14, 2015, during a previously scheduled bargaining session, defendant requested a caucus to prepare counter-offers but after nearly three and a half hours returned with the *exact* proposal it had previously provided in the last *year* of bargaining.

62.     On January 18-19, 2014, the parties were scheduled in advance for a two-day bargaining session when defendant abruptly cancelled the second day after declaring it had nothing further to discuss.

63.     On March 13, 2014, defendant abruptly ended a previously scheduled bargaining session at 2:15 p.m. announcing that it was "not prepared for anything else – sorry."

64.     By such tactics of coming to scheduled-in-advance bargaining sessions unprepared to bargain, the true purpose of defendant is to undermine AMFA's bargaining representatives, undermine the chosen representatives of Southwest Mechanics, force AMFA to acquiesce to defendant's demands for concessionary contract terms in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives – all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and economic interests, and such conduct is in derogation of Southwest' obligation to make every reasonable effort to reach an agreement.

65.     To remedy such irreparable harm, there is no other avenue available to resolve this dispute or to avoid industrial strife than this Court.

d)   **Southwest's Canceling Meetings Without Good Cause:**

66.   As part of a continuation of earlier conduct, before July 1, 2016, Southwest engaged in the tactic of canceling bargaining sessions scheduled in advance without good cause.  This was calculated to, or had the foreseeable effect of, avoiding agreement, imposing delay or cost, displaying the mere pretense of bargaining, and implying an unwillingness to ever come to agreement with AMFA, as follows:

67.   On May 10, 2016, the parties' respective bargaining committees were scheduled to meet for three days of face-to-face bargaining but defendant cancelled the first day without good cause when it was unprepared for bargaining by failing to bring the appropriate subject-matter expert to the table to address the scheduled issues.

68.   On December 10, 2014, defendant cancelled the second day of a two day previously scheduled bargaining session asserting that it wanted to caucus in private about contract articles that had not yet even been negotiated.

69.   "Burning" scheduled dates for face-to-face bargaining, where actual agreement is possible, for supposed preparation of issues not even yet broached, for which no bargaining dates are yet agreed, directly implies an unwillingness to reach agreement with AMFA in the present over matters open and scheduled for discussion.

70.   By deploying the tactic of canceling bargaining sessions scheduled in advance without good cause the true purpose of defendant is to undermine AMFA bargaining representatives, undermine the chosen representatives of Southwest Mechanics, force AMFA to acquiesce to defendant's concessionary demands for contract terms in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives, and accurately conveys or implies an unwillingness to ever reach agreement with AMFA or to continue negotiating with AMFA in good faith – all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.

71.   To remedy such irreparable harm, there is no other avenue available to

1    resolve this dispute or to avoid industrial strife than this Court.

2

3        e)    __Southwest's Refusal of Reasonable Information Requests:__

4        72.    Since July 1, 2016, in collective bargaining with AMFA, Southwest has

5    engaged in a tactic of refusing AMFA's reasonable information or document requests that

6    are related to bargaining – and notwithstanding Southwest's representations, made across

7    the table, that such reasonable requests would indeed be honored in order to facilitate

8    bargaining.  These refusals, as follows below, are calculated to, or have the foreseeable

9    effect of, avoiding agreement, imposing delay or cost, and displaying the mere pretense of

10   bargaining.   They convey or imply to rank and file, and to their chosen representatives, an

11   unwillingness to ever come to agreement with AMFA or to negotiate in good faith:

12       73.    Since July 1, 2016, AMFA's bargaining committee requested of defendant's

13   bargaining committee that it provide economic costing data regarding an issue known as

14   "Inspector backfill" that is a subject of bargaining, for the purpose of reaching agreement

15   on the issue.  AMFA was advised by the defendant that such data would be forthcoming.

16   Defendant, however, has without reasonable cause or any claim to reasonable cause, failed

17   to date to provide a comprehensive response.

18       74.    In addition, as part of a continuation of earlier conduct, before July 1, 2016,

19   Southwest has engaged in the tactic of refusing reasonable information requests calculated

20   to, or that has the foreseeable effect of, avoiding agreement, imposing delay or cost, and

21   displaying the mere pretense of bargaining, as follows:

22       75.    By deploying the tactic of refusing AMFA's reasonable information or

23   document requests related to bargaining, the true purpose of defendant is to convey or

24   imply an unwillingness to reach agreement with AMFA's representatives, to undermine

25   AMFA bargaining representatives, to undermine the chosen representatives of Southwest

26   Mechanics, and to force AMFA to acquiesce to defendant's concessionary demands for

27   contract terms – all in the interests of defendant and at the expense of AMFA members and

28

contrary to the compromise proposals of AMFA bargaining representatives.  This is all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.

76.   To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

**f)   Southwest's Not Bringing Authorized Bargaining Representatives:**

77.   As part of a continuation of earlier conduct, before July 1, 2016, Southwest has engaged in a tactic of refusing to bring bargaining representatives to scheduled bargaining sessions who are actually authorized to make agreements.  This is calculated to, or has the foreseeable effect of, avoiding agreement, imposing delay or cost, displaying the mere pretense of bargaining and amply demonstrating that Southwest has no intention of ever reaching agreement with AMFA:

78.   On May 10, 2016, defendant canceled an entire day of previously scheduled bargaining claiming it was unprepared with proper subject-matter experts.

79.   On January 18-19, 2014, the parties were scheduled in advance for a two-day bargaining session.  Defendant abruptly cancelled the second day, however, because defendant's lead negotiator was absent.

80.   On December 10, 2014, defendant cancelled the second of a two-day bargaining session.  It claimed it wanted to spend time focusing on opening up articles that had not yet been previously negotiated.  This 'horse before the cart' tactic is obfuscation of defendant's RLA obligation to bargain in good faith.

81.   On January 18-19, 2014 the parties were scheduled for a two-day bargaining session but defendant abruptly canceled the entire second day after advising the AMFA bargaining committee that it had nothing further to discuss.  However, since that date the parties had met on at least a dozen occasions yet still no agreement has been reached.

82.   On November 12, 2014, in Dallas, defendant regressed from previously

agreed-to language in Article 9, regarding limitations on work performed by "bump-up" supervisors, because it claimed "the operators" – who were not even present at the bargaining table at the time of agreement – had "found too many holes." This explanation highlights the futility of negotiations with a party, defendant, that plans ahead to undermine any agreement reached by claiming lack of authority *retroactively*.

83.     By such transparent tactics of not bringing bargaining representatives to bargaining sessions who are actually authorized to make agreements the true purpose of defendant is to undermine AMFA bargaining representatives, undermine the chosen representatives of Southwest Mechanics, force AMFA to acquiesce to defendant's concessionary demands for contract terms in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives, all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests. These tactics imply an un willingness to ever reach agreement with AMFA.

84.     To remedy such irreparable harm, there is no other avenue available to resolve this dispute or to avoid industrial strife than this Court.

**6)     Southwest Is Direct Dealing:**

**a)     Direct Polling Of AMFA Members About Mandatory Bargaining Subjects Or Union Representation:**

85.     Since July 1, 2016, Southwest has directly polled AMFA members about mandatory bargaining subjects, or about AMFA representation in collective bargaining, with the intent, purpose and effect, of dealing directly with AMFA members in order to bargain for *defendant's* proposals, or to undermine the effectiveness of AMFA bargaining representatives, or AMFA, or the collective bargaining process itself. Through such actions a clarion message is sent of defendant's unwillingness to ever come to agreement with the Mechanics' chosen, elected representative, AMFA.

86.     On or about November 9, 2016, in or from Dallas, defendant's bargaining

committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass mailing letter to all AMFA members all about mandatory subjects of bargaining entitled "Negotiation Update and New Resources" that announced defendant was "launching a negotiations feedback inbox" for all AMFA members to "get you the answers you need" about bargaining and that invited members to *correspond with defendant* and potentially even get "individual response[s] to each email" about bargaining, and that solicited AMFA members to view *future* on-line resources developed by defendant – a "Resources Map … on SWAlife labor page" – in order that AMFA members can "get the facts" about "contract negotiations" all so that defendant could gather AMFA members' "input" that defendant declares it "will use … to build Frequently Asked Questions (FAQs) that will live [in the future] on the SWALife Labor page" [defendant's internal intranet].

87.    Such conduct constitutes *polling by on-line* or electronic means of communication.

88.    Such on-line polling is ongoing and expanding beyond the purview of AMFA and distracting from efforts to reach agreement at the table.

89.    By such on-line polling of AMFA members, the true purpose of defendant, or foreseeable effect, is to deal directly with rank and file AMFA members – instead of their chosen representative in order to undermine the chosen representatives of Southwest Mechanics, undermine AMFA, undermine collective bargaining, or to force AMFA or its members to acquiesce to defendant's concessionary take-it-or-leave-it demands for contract terms in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives.  This is all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.  Such conduct announces, if not implies, defendant's resolve to avoid any agreement with AMFA or to ever bargain in good faith with it.

90.    To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

**b)** **Direct Emailing Or Corresponding With AMFA Members About Mandatory Bargaining Subjects Or Union Representation:**

91.     Since July 1, 2016, and most recently on December 12, 2016, Southwest has directly corresponded by email or otherwise with AMFA members about mandatory bargaining subjects or about AMFA representation in collective bargaining, with the intent, purpose and effect of dealing directly with AMFA members to bargain for Company proposals, or to undermine the effectiveness of AMFA bargaining representatives, or AMFA, or the collective bargaining process itself, and to demonstrate to all of rank and file defendant's unwillingness to ever come to agreement with AMFA as well as its open contempt for the AMFA bargaining representatives at the table who are attempting to reach agreement with the carrier in a time not of industry or company hardship but rather of plenty and record profits.

92.     On September 14, 2016, in or from Dallas, defendant's bargaining committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass mailing letter to all AMFA members about mandatory subjects of bargaining entitled "Negotiation Update on Outsourcing" that commented on the AMFA bargaining committee and unreasonably criticized it, that directly proposed terms of contract, that sought to undermine AMFA's status as the exclusive collective bargaining representative, and that stated in part that, "your Union took a different course … false information like this [union sponsored communications] … will *never* bring us closer to an agreement." [emphasis added]

93.     On August 18, 2016, in or from Dallas, defendant's bargaining committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass mailing letter to all AMFA members about mandatory subjects of bargaining entitled "AMFA Negotiation Update."  This mass mailing commented on the AMFA bargaining committee, directly proposed terms of contract, unreasonably criticized AMFA's bargaining representative, and stated in part that, "based on the AMFA negotiating team's reaction, we are concerned that they have no intention of putting this [Company's] best-in-class offer in front of our Mechanics for a vote" and "they [AMFA bargaining representatives] have also

misrepresented the facts of our offer …" and threatening that the Mechanic's chosen representatives "would extend negotiations indefinitely" and that "after four long years, we think you deserve an opportunity to decide for yourself [to vote for the Company's demands]".   The patent implication from this to all rank-and-file was that defendant will never reach an agreement with the chosen representatives of its Mechanics.

94.     Again, on August 16, 2016, in or from Dallas, defendant's bargaining committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass letter to all AMFA members about mandatory subjects of bargaining entitled "AMFA Mediation" that commented on the AMFA bargaining committee, that directly proposed terms of contract, that unreasonably criticized AMFA's bargaining representative, and that stated in part that "but their Union representatives at the bargaining table … now *that* is a different story …" and "to suggest that the Union is in turmoil would be an understatement …" [emphasis added].  This communication by defendant overtly threatened AMFA members with a refusal to ever come to agreement without AMFA (and its members') surrender to defendant's take-it-or-leave-it posture.  Therefore, the letter stated in part, "we fear, sadly, that absent some change in the attitude of the AMFA bargaining committee, *there is no agreement that can be reached*" and "it would be foolhardy to describe the current situation as anything but *bleak*" [emphasis added].

95.     On August 11, 2016, in or from Dallas, defendant's bargaining committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass mailing letter to all AMFA members about mandatory subjects of bargaining entitled "AMFA Mediation." This letter commented on the AMFA bargaining committee, directly proposed terms of contract, unreasonably criticized AMFA's bargaining representative, and further stated in part that, "we believe they [AMFA] are not representing the best interests of our Mechanics." The letter thus threatened AMFA members with "another year" of bargaining and implied that no contract will be *ever* be made with the Mechanics' chosen representative absent their acquiescence to defendant's take-it-or-leave it demands.

96.    By such direct correspondence with AMFA members the true purpose of defendant, or foreseeable effect, is to *deal directly* with members – instead of their chosen representative.  It is also to undermine the chosen representatives of Southwest Mechanics, to undermine AMFA, to undermine the collective bargaining process itself, to force AMFA or its members to surrender to defendant's take-it-or-leave it demands for concessionary contract terms that are in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives, and to imply an unwillingness to reach agreement with AMFA representatives or an unwillingness to negotiate in good faith.  This all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and their economic interests.

97.    To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

**c)**    **Soliciting To, And Holding, Meetings With, AMFA Rank And File Members About Mandatory Bargaining Subjects Or Union Representation:**

98.    Since July 1, 2016, Southwest has directly polled AMFA members about mandatory bargaining subjects or about AMFA representation in collective bargaining, with the intent, purpose and effect of dealing directly with AMFA members to bargain for Company proposals or to undermine the effectiveness of AMFA bargaining representatives, or AMFA, or the collective bargaining process itself,  and to demonstrate to rank-and-file defendant's unwillingness to bargain in good faith with their chosen representative.

99.    Sometime in August 2016, defendant launched a program with lower level management for direct, private contact with AMFA rank and file.  This required and instructed lower level management actively solicit and hold direct, private meetings with AMFA members, singular or collectively, to discuss subjects of mandatory bargaining and the quality of union representation.

1        100.   In a publication describing the program entitled "Leader's Toolkit Mechanics

2    and Related Employees August 2016 Offer" defendant instructed, in part, its lower level

3    management that, "as we enter this critical period in negotiations, we ask that you talk to

4    your Team Leaders [AMFA members] about the negotiating process" and that "it is

5    *appropriate* to talk about negotiations during morning meetings and other administrative

6    gatherings" and "we also *encourage* you to remind Mechanics of the [online] resources

7    available to them." [emphasis added]

8        101.   In addition, in the publication describing the program entitled "Leader's

9    Toolkit Mechanics and Related Employees August 2016 Offer" defendant instructed its

10   lower level management to communicate in meetings with AMFA members, in part, the

11   following: that "based on the AMFA negotiating team's reaction to our proposal, we

12   believe they are *not representing the best interests of our employees* and have no intention

13   of putting …" [the defendant's offer] out for a vote" [emphasis added]; that "AMFA's

14   negotiating team has also *misrepresented* the facts of our offer and we must set the record

15   straight" [emphasis added]; that AMFA bargaining representatives "would extend

16   negotiations and indefinitely" [emphasis added]; that AMFA bargaining representatives

17   have used a "scare tactic" on AMFA members.

18       102.   On or about November 15, 2016 in Dallas, defendant's bargaining committee

19   member and Senior Manager of Labor Relations, Mark Lyon, met face-to-face with several

20   AMFA members and discussed mandatory bargaining subjects or union representation.

21       103.   By such meetings with AMFA members and solicitation for private,

22   propaganda meetings the true purpose of defendant, or foreseeable effect, is to deal directly

23   with members instead of their chosen representative, undermine the chosen representatives

24   of Southwest Mechanics, undermine AMFA, undermine collective bargaining, force

25   AMFA or its members to acquiesce to defendant's demands for concessionary contract

26   terms in the interests of defendant and at the expense of AMFA members and contrary to

27   the compromise proposals of AMFA bargaining representatives – all to the detriment and

28

irreparable harm of AMFA and its members' rights under the RLA and economic interests.

104.    To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

**d)    Deploying The Company Bargaining Team To Hold "Road Show" Meetings With Rank And File About Mandatory Bargaining Subjects Or Union Representation:**

105.    Since July 1, 2016, Southwest has conducted meetings with AMFA members about mandatory bargaining subjects or about AMFA representation in collective bargaining entitled "road shows" that feature the defendant's own *bargaining committee*, all with the intent, purpose and effect of, dealing directly with AMFA members to bargain for Company proposals or to undermine effectiveness of AMFA bargaining representatives, or AMFA, or the collective bargaining process itself.  Such road shows powerfully and in-person demonstrate to AMFA rank and file members defendant's refusal to ever reach agreement with AMFA and constitutes a parallel collective bargaining process directly with members.

106.    On or about October through November 2016, members of the defendant's bargaining committee, individually or collectively, conducted 'road shows' directly discussing mandatory subjects of negotiations with AMFA members in stations where a substantial number of AMFA members were employed, including but not limited to Dallas, Oakland, and Phoenix, Denver, Fort Lauderdale, Baltimore, Los Angeles, Las Vegas, and Chicago.

107.    By such "road shows" with AMFA rank and file (with no union representatives present) the true purpose of defendant, or foreseeable effect, is to deal directly with members instead of their chosen representative, undermine the chosen representatives of Southwest Mechanics, undermine AMFA, undermine collective

bargaining, force AMFA or its members to acquiesce to defendant's demands for concessionary contract terms in the interests of defendant and at the expense of AMFA members and contrary to the compromise proposals offered by the AMFA bargaining representatives, and demonstrates for all to see that no good faith bargaining with AMFA will ever occur.  This is all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and economic interests.

108.     To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

### e)     Subjecting Rank And File To Televised Content About Mandatory Bargaining Subjects Or Union Representation, In Their Workplace, While On Duty.

109.     Since July 1, 2016, and before, Southwest has televised directly to AMFA rank and file in their work stations, while on duty, content about mandatory bargaining subjects or about AMFA representation in collective bargaining.  Defendant has done so with the intent, purpose and effect of dealing directly with AMFA members to bargain for Company proposals, or to undermine effectiveness of AMFA bargaining representatives, or undermine AMFA, or undermine the collective bargaining process itself.

110.     Defendant has live streamed bargaining proposals or bargaining related content as well as implicit anti-union content using company television monitors in the fixed in work place to saturate AMFA rank and file while on duty, on company property in or about their work areas, at stations including Dallas (the largest station employing AMFA members), in Phoenix, in Las Vegas, in Oakland, in Los Angeles, in Denver, and in Houston – virtually system wide.

111.     Defendant's campaign to televise anti-AMFA media content into the workplace, directly to a captive audience of AMFA members, alone or cumulatively along with all the other acts of bad faith bargaining with AMFA representatives, direct dealing, and interference (as alleged herein), demonstrates to AMFA members that defendant

refuses to ever reach agreement with AMFA, or bargain in good faith, and constitutes a parallel collective bargaining process directly with members.

**7)**    **<u>Southwest Is Interfering With AMFA:</u>**

112.    Since July 1, 2016, Southwest has directly interfered with the designated representative of its Mechanics craft or class, AMFA, or has interfered with organization of its Mechanics craft or class, AMFA, or attempted to do so.

113.    By and through all acts alleged herein to constitute bad faith bargaining or direct dealing, defendant is also and inevitably *interfering* with the designated representative of the craft or class of the Mechanics and Related Employees of Southwest Airlines Company, i.e. AMFA, or is interfering with the organization of its employees, i.e. AMFA, or the assistance of it by rank and file.

114.    Since July 1, 2016 and before, defendant has televised directly to AMFA rank and file while on duty, in their work stations, in Dallas, Phoenix, Las Vegas, Oakland, Los Angeles, Denver, and Houston – for all practical purposes to a captive audience – a constant barrage of bargaining proposals or bargaining related content as well as implicit anti-union content using company television monitors.

115.    On November 9, 2016, in or from Dallas, defendant's bargaining committee leader and Vice President of Labor Relations, Mike Ryan, sent a mass mailing letter to all AMFA members about mandatory subjects of bargaining entitled "Negotiation Update and New Resources" that announced defendant was presetting "new resources" and "launching a negotiations feedback inbox" for all AMFA members to "get you the answers you need" about bargaining and that invited members to correspond with defendant and potentially even get "individual response[s] to each email" about bargaining, and that solicited AMFA members to view through on-line resources developed by defendant on its intranet web site, entitled "Resources Map … on SWAlife labor page", material published by defendant in order that AMFA members can "get the facts" about "contract negotiations" and that invited AMFA member's "input."  This interfered with AMFA.

116.    Subsequent to defendant's November 9, 2016 announcement of on-line "new resources" for AMFA members, defendant published on-line statements to AMFA members such as "we encourage you to reach out to the Union and express your desire that AMFA *work with us* …" [emphasis added].  The most recent publication to rank and file by defendant was December 12, 2106.

117.    Further, subsequent to defendant's November 9, 2016, announcement of on-line "new resources" for AMFA members, defendant published on-line a web page entitled "myth vs fact" that contrasted supposed union positions on bargaining with those substituted by defendant.   The purpose and effect was to, and is, supplant and substitute the elected representatives of the Mechanics with a company substitute.  The intent and effect is to create an on-line, company-dominated union – a 21st century version of a company-run, bogus union.   This is all at the expense of employees, contrary to Congressional intent expressed in the RLA, and deeply subversive of the Act.

118.    The establishment of said on-line resources is calculated to, or has the effect of, *substituting* the defendant in place of the chosen representative of defendant's Mechanics, or its organization, AMFA.

119.    By such interference with AMFA the true purpose of defendant, or foreseeable effect, is to influence or coerce the Southwest Mechanics' choice of representative, to undermine its chosen representatives, or to force AMFA or its members to acquiesce to defendant's concessionary demands for contract terms in the interests of defendant at the expense of AMFA members and contrary to the compromise proposals of AMFA bargaining representatives – and to powerfully demonstrate to rank and file the utter futility of any further negotiations with their chosen representatives – all to the detriment and irreparable harm of AMFA and its members' rights under the RLA and economic interests.

120.    To remedy such irreparable harm, there is no other avenue available to resolve this dispute, or to avoid industrial strife, than this Court.

**8)**     **Continuing Interference:**

121.   On or about February 8, 2017, or thereafter, Company negotiator Scott Colling and Phoenix Night Manager Gary Edgar, spread false rumors calculated to influence AMFA-represented members and undermine the Union's standing, that the AMFA Negotiating Committee failed to show up for a scheduled bargaining session on February 7, 2017.

122.   Southwest Vice President of Maintenance, Landon Nitschke, sent a letter directly to AMFA-represented members at Southwest, which implored AMFA's members to "gain permission to see and vote on the Company's proposal," despite that there is no proposal available to be voted upon.

123.   Southwest Vice President of Labor Relations and lead negotiator for the Company's negotiating committee with AMFA, Mike Ryan, sent a letter directly to AMFA-represented members at Southwest, which commanded them to "ask your Union for permission to vote on the Company's proposal," despite that there is no proposal available to be voted upon.

124.   Following distribution of the letters set forth in paragraphs 122 and 123, Southwest managers held face-to-face meeting with large groups of AMFA members at stations across the Southwest system, including but not limited to, Phoenix and Chicago, while at work imploring them to demand to see and vote on a Company proposal, despite that there is no proposal available to be voted upon.

125.   On or about February 15-16, 2017, Defendant has live streamed a message directly to AMFA represented members using company television monitors in the fixed in work place to saturate AMFA rank and file while on duty, on company property in or about their work areas, at stations including, but not limited to Dallas (the largest station employing AMFA members), in Phoenix, in Oakland, in Chicago, and in in Denver – virtually system wide.  The message read: "FIVE YEARS IS TOO LONG. It is past time for Southwest Mechanics to vote on our industry-leading offer. SPEAK WITH YOUR

UNION," despite that there is no proposal available to be voted upon.

**9)**      <u>**Status Quo Violations And Failure To Comply With The RPP Decision:**</u>

126.      Pursuant to the terms of the RLA, the current contract has continued in effect after August 16, 2012, even as the parties (AMFA and Southwest) have carried on negotiations to reach a new collective bargaining agreement pursuant to the RLA's Section 6 "major dispute" resolution process. 45 U.S.C. § 156; *Detroit & T.S.L.R.R. v. UTU,* 396 U.S. 142, 149-53 (1969).

127.      The RLA requires the parties to maintain the "*status quo*" until a new agreement is reached, which means that rates of pay, rules and working conditions shall not be altered by the carrier until a new agreement is reached. 45 U.S.C. § 152, Seventh; § 156.

128.      Federal District Courts have the power to enforce the duty to maintain the *status quo* and enjoin either party from engaging in unilateral conduct that violates that duty. *Detroit & T.S.L.R.R.,* 396 U.S. 142, 147 (1969); *Teamsters v. Southwest Airlines Co.,* 875 F.2d 1129, 1133 (5th Cir. 1989) (en banc), *cert. denied*, 493 U.S. 1043 (1990).

129.      Injunctive relief may issue for carrier violations of the *status quo*, even in the absence of a traditional showing of irreparable harm. *Consolidated el Rail Corp. v. Railway Labor Executives,* 491 U.S. 299, 303 (1989).

130.      On October 6, 2016, the parties System Board of Adjustment issued a final and binding Opinion and Award in the matter of grievance SWA-3670 "Respiratory Protection Program" or "RPP" by Arbitrator Elizabeth Neumeier (i.e., the Arbitration Decision).

131.      The Decision in its "Award" section stated: "The grievance will be sustained in part and denied in part. The RPP is unreasonable as it broadly applies to line only AMTs. The Company should clarify the RPP and take steps to ensure that it is properly administered. However, the RPP, as a whole, has not been shown to be unreasonable."

132.      By letter dated November 8, 2016, counsel for AMFA wrote to counsel for

Defendant to inquire, "…what it has done to date to comply with the Decision, or what it intends to do and when, or whether it is unclear as to the meaning of the Decision, or whether it intends to take no action at all.  Please be advised that AMFA reserves all rights to enforce the Decision pursuant to 45 USC § 153.

133.    On January 12, 2017, Defendant published a new, 2017 "Respirator Protection Program" (i.e., the 2017 RPP policy).

134.    The 2017 RPP policy added this change to the prior policy: "Line and RON Line Employees/RPP Voluntary Testing [.] Required to be qualified for shift trades and overtime opportunities in hangar bid locations […] Lockouts will be established prior to non-compliance with the Employee[.]"

135.    An email sent January 12, 2017 from Defendant's Director of Labor Relations Bill Venkus to AMFA officers, stated, in part: "The use of a respirator is now voluntary for the AMT line areas.  Based on the requirements in certain areas, those not RPP qualified will not be able to trade and/or pick up overtime in Hangar Base locations."

136.    On January 13, 2017, Defendant issued the 2017 RPP policy with a memo to all AMFA members that stated in part, "Non-compliance with the RPP program will result in Employee lock out."

137.    Defendant's RPP policy and its implementation constitutes a unilaterally imposed change in the rates of pay, rules and working conditions of AMFA members, who are adversely affected and harmed by it.

138.    Defendant's RPP policy and its implementation fails to comply with the Decision, which failure adversely affects and harms AMFA members.

139.    On February 15, 2017, Arbitrator Neumeier speaking for the Board advised the parties in an email after reviewing written submissions by each that, "[absent agreement or order] …the doctrine *functus officio* applies here and I am without jurisdiction to clarify my decision."

## V. CAUSES OF ACTION.

**Count I:**
**Failure To Exert Every Reasonable Effort To Make And Maintain Agreements**
**Concerning Rates Of Pay, Rules, And Working Conditions,**
**Through Bad Faith In Collective Bargaining,**
**In Violation Of The Railway Labor Act, 45 U.S.C. § 152, First**

140.   AMFA repeats and realleges paragraphs 1 through 139 of the Complaint as if fully set forth herein.

~~122~~141.   The Railway Labor Act at 45 U.S.C. § 152, First, entitled "Duty of Carriers And Employees To Settle Disputes", provides in whole that [with emphasis added]:

> It shall be the duty of all carriers, their officers, agents, and employees to **exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions**, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

142.   The parties, plaintiff AMFA and defendant Southwest, are currently engaged in collective bargaining over a new contract, as previously alleged herein.

143.   By the following acts, including as previously alleged herein, occurring within the last six months albeit, as part of a continuation of earlier conduct, by cumulative effect, defendant has breached its duty to make and maintain agreements through bad faith in collective bargaining in violation of 45 U.S.C. § 152, First by: i) take-it-or-leave-it and surface bargaining tactics; ii) by regressive bargaining such as taking back previously negotiated items, iii) by arriving to negotiations unprepared, iv) by canceling meetings for dubious reasons; v) by refusing reasonable requests for documents or information calculated to facilitate agreement, and vi) by failing to bring to the 'table' in bargaining sessions carrier-representatives with proper authority to make any agreements at all.

144.   By and through these acts defendant has demonstrated a purpose and intent not to reach a mutual agreement with AMFA but rather to delay and frustrate negotiations and to impose unnecessary cost in order to compel AMFA to acquiesce to defendant's

1 unilateral demands.

2
3      145.   By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, First.

4
5      146.   By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is
6 no other avenue available to resolve this dispute and to avoid industrial strife.

7      147.   Further, 28 U.S.C. § 2201 provides that:

8
9      [i]n the case of actual controversy within its jurisdiction any court of the
       United States, upon the filing of an appropriate pleading, may    declare the
10     rights and other legal relations of any interested party seeking such
       declaration, whether or not further relief is or could be sought.  Any such
11     declaration shall have the force and effect of a final judgment or decree and
       shall be reviewable as such.
12

13     148.   AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's
14 conduct constitutes a violation of 45 U.S.C. § 152, First.

15     149.   AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless
16 the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA
17 has no prompt, adequate and effective remedy at law.  AMFA will be successful on the
18 merits of this action.

19
20                              **Count II:**
       **Failure To Consider Disputes With All Expedition In Conference With AMFA**
21                    **In Collective Bargaining,**
       **In Violation Of The Railway Labor Act, 45 U.S.C. § 152, Second**
22

23     150.   AMFA repeats and realleges paragraphs 1 through 149 of the Complaint as
24 if fully set forth herein.

25     151.   The Railway Labor Act at 45 U.S.C. § 152, Second, entitled "Consideration
26 Of Disputes By Representatives", provides in whole that [with emphasis added]:

27     All disputes between a carrier or carriers and its or their employees shall be
       considered, and, if possible, decided, **with all expedition, in conference**
28     between representatives designated and authorized so to confer, respectively,

by the carrier or carriers and by the employees thereof interested in the dispute.

152.   The parties, plaintiff AMFA and defendant Southwest, are currently engaged in collective bargaining over a new contract, as previously alleged herein.

153.   By the following acts, including as previously alleged herein, occurring within the last six months, albeit as part of a continuation of earlier conduct, and by cumulative effect, defendant has breached its duty to consider all disputes and if possible decide them with all expedition in conference with AMFA in collective bargaining in violation of 45 U.S.C. § 152, Second by: i) take-it-or-leave-it and surface bargaining tactics; ii) by regressive bargaining such as taking back previously negotiated items, iii) by arriving to negotiations unprepared, iv) by canceling meetings for dubious reasons; v) by refusing reasonable requests for documents or information calculated to facilitate agreement, and vi) by failing to bring to the 'table' in bargaining sessions carrier-representatives with proper authority to make any agreements at all.

154.   By and through these acts defendant has demonstrated a purpose and intent not to reach a mutual agreement with AMFA but rather to delay and frustrate negotiations and to impose unnecessary cost in order to compel AMFA to acquiesce to defendant's unilateral demands.

155.   By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, Second.

156.   By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is no other avenue available to resolve this dispute and to avoid industrial strife.

157.   Further, 28 U.S.C. § 2201 provides that:

[i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may    declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

158.    AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. § 152, Second.

159.    AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

**Count III:**
**Failure To Treat With AMFA,**
**The Certified Representative Of The Craft Or Class Of Aircraft Mechanics,**
**In Violation Of The Railway Labor Act, 45 U.S.C. § 152, Ninth.**

160.    The plaintiff repeats and realleges paragraphs 1 through 159 of the Complaint as if fully set forth herein.

161.    The Railway Labor Act at 45 U.S.C. § 152, Ninth, entitled "Disputes as to identity of representatives; designation by Mediation Board; secret elections", provides in whole that [with emphasis added]:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the **carrier shall treat with the representative so certified** as the representative of the craft or class for the purposes of this chapter.

162.    AMFA is the certified bargaining representative of the craft or class of Mechanics and Related Employees of Southwest Airlines Company, its successors and assigns, as previously alleged.

163.    By the following acts, including as previously alleged herein, occurring within the last six months, albeit as part of a continuation of earlier conduct, and by

cumulative effect, defendant has breached its duty to treat with AMFA in violation of 45 U.S.C. § 152, Ninth by: i) directly polling AMFA members, ii) by directly emailing or corresponding with AMFA members, iii) by holding individual supervisor meetings with members (singly or collectively), iv) by conducting meetings or "road shows" with its bargaining committee directly with AMFA members who are not on AMFA's bargaining committee, where such polling, email or correspondence, or meetings are about mandatory subjects of bargaining, made in a manner and with such cumulative force as to suggest or imply a refusal to bargain in good faith with AMFA's designated representatives, and to undermine AMFA, and v) by televising bargaining proposals and anti-AMFA content into the workplace to directly reach a captive audience of rank and file.

145164.    By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, Ninth.

165.    By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is no other avenue available to resolve this dispute and to avoid industrial strife.

166.    Further, 28 U.S.C. § 2201 provides that:

[i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may    declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

167.    AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. § 152, Ninth.

168.    AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

## Count IV:
### Interference With The Designated Choice Of Representative,
### Of The Southwest Aircraft Mechanics, AMFA,
### In Violation Of The Railway Labor Act, 45 U.S.C. § 152, Third.

169.    The plaintiff repeats and realleges paragraphs 1 through 168 of the Complaint as if fully set forth herein.

170.    The Railway Labor Act at 45 U.S.C. § 152, Third entitled, "Designation Of Representatives", provides in whole that [with emphasis added]:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of **the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives** of those who or which are not employees of the carrier.

171.    As previously alleged, AMFA is the designated choice of representative for the craft or class of Mechanics and Related Employees of Southwest Airlines Company.

172.    By the following acts, including as previously alleged herein, occurring within the last six months, albeit as part of a continuation of earlier conduct, and by cumulative effect, defendant has interfered with the designated representative of the craft or class of Mechanics and Related Employees of Southwest Airlines Company, AMFA, in violation of 45 U.S.C. § 152, Third: i) bad faith bargaining, ii) direct dealing, iii) the establishment of on-line resources to substitute and replace AMFA, and iv) televising bargaining proposals and anti-AMFA content into the workplace to directly reach a captive audience of rank and file.

173.    By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, Third.

174.    By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is

no other avenue available to resolve this dispute and to avoid industrial strife.

175.   Further, 28 U.S.C. § 2201 provides that:

[i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may    declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

176.   AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. § 152, Third.

177.   AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

### Count V:
### Interference With The Organization
### Of The Southwest Aircraft Mechanics, AMFA,
### In Violation Of The Railway Labor Act, 45 U.S.C. § 152, Fourth.

178.   The plaintiff repeats and realleges paragraphs 1 through 177 of the Complaint as if fully set forth herein.

179.   The Railway Labor Act at 45 U.S.C. § 152, Fourth, entitled "Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden", provides in whole that [with emphasis added]:

Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and **it shall be unlawful for any carrier to interfere in any way with the organization of its employees**, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor

representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: *Provided*, That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization.

180.    As previously alleged, AMFA is the organization of the craft or class of Mechanics and Related Employees of Southwest Airlines Company whom they chose.

181.    By the following acts, including as previously alleged herein, occurring within the last six months, albeit as part of a continuation of earlier conduct, and by cumulative effect, defendant has interfered with the organization of its craft or class of Mechanics and Related Employees of Southwest Airlines Company, AMFA, in violation of 45 U.S.C. § 152, Fourth: i) bad faith bargaining, ii) direct dealing, iii) the establishment of on-line resources to substitute and replace AMFA.

182.    By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, Fourth.

183.    By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is no other avenue available to resolve this dispute and to avoid industrial strife.

184.    Further, 28 U.S.C. § 2201 provides that:

[i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may    declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

185.    AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. § 152, Fourth.

186.    AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

**Count VI:**
**Failure To Maintain The *Status Quo*,**
**In Violation Of The Railway Labor Act, 45 U.S.C. § 152, Seventh.**

187.    The plaintiff repeats and realleges paragraphs 1 through 186 of the Complaint as if fully set forth herein.

188.    The Railway Labor Act at 45 U.S.C. § 152, Seventh, entitled "Change in pay, rules, or working conditions contrary to agreement or to section 156 forbidden", provides that [with emphasis added]:

> No carrier, its officers, or agents shall **change the rates of pay, rules, or working conditions** of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

189.    By the following acts, including as previously alleged herein, occurring within the last six months albeit as part of a continuation of earlier conduct, defendant has violated the *status quo* obligation of 45 U.S.C. § 152, Seventh: Implementation of the 2017 RPP policy.

190.    By and through these acts defendant has and remains in violation of 45 U.S.C. § 152, Seventh.

191.    By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is no other avenue available to resolve this dispute and to avoid industrial strife.

192.    Further, 28 U.S.C. § 2201 provides that:

> [i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may   declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

193.    AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. § 152, Seventh.

194.    AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

### Count VII:
### Failure To Comply With A Decision Of A System Adjustment Board, In Violation Of The Railway Labor Act, 45 U.S.C. § 153, First (p), *et al*.

195.    The plaintiff repeats and realleges paragraphs 1 through 194 of the Complaint as if fully set forth herein.

196.    The Railway Labor Act at 45 U.S.C. § 153, First (p), provides that [with emphasis added]:

> If a carrier does not comply with an order of a division of the Adjustment Board … any person my file in the District Court of the United States … if the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee … The district courts are empowered … to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce … the order …

197.   By the following acts, including as previously alleged herein, occurring within the last six months, defendant has failed to comply with the System Board of Adjustment's order: Implementation of the 2017 RPP policy.

198.    By and through these acts defendant has and remains in violation of 45 U.S.C. §§ 153, 181, and 184, which make orders of the System Board of Adjustment final and binding, conclusive on parties and enforceable. *Rossi v. Trans World Airlines*, 350 F. Supp. 1263, 1269 (C.D. Cal. 1972), *aff'd*, 507 F.2d 404 (9th Cir. 1974.

199.    By and through these acts by defendant, AMFA and its members have been harmed and will suffer irreparable harm if injunctive relief is not provided because there is no other avenue available to resolve this dispute and to avoid industrial strife.

200.    Further, 28 U.S.C. § 2201 provides that:

> [i]n the case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

201.    AMFA seeks a declaration pursuant to 28 U.S.C. § 2201 that defendant's conduct constitutes a violation of 45 U.S.C. §§ 153, 181, and 184 for failure to comply with an Award or order of the parties System Board of Adjustment.

202.    AMFA is aggrieved of the violations of law alleged herein.  Therefore, unless the Court issues declaratory relief as requested, AMFA will be irreparably injured.  AMFA has no prompt, adequate and effective remedy at law.  AMFA will be successful on the merits of this action.

## VI. PRAYER FOR RELIEF.

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

i)      A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the actions of defendant complained of herein constitute a violation of the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, as alleged herein;

ii)     An order enjoining defendant as follows:

a)      To henceforth engage in good faith bargaining to make all reasonable efforts to make and maintain agreements over pay, rule and working conditions; and

b)      To cease and desist any direct polling in any form of AMFA members about

mandatory subjects of bargaining;

c)     To cease and desist holding any direct meetings with members of AMFA (singly or collectively) about mandatory subjects of bargaining unless also attended by AMFA representatives;

d)     To cease and desist direct emailing or corresponding or televising to or with AMFA members about mandatory subjects of bargaining or disparaging AMFA representatives unless confined only to explaining Company proposals;

v)     An order enjoining defendant from engaging in any form of self-help following release by the NMB, pursuant to the "unclean hands' doctrine", or if this Court subsequently determines that defendant is in contempt of any part of this Order;

VI)    An order enforcing the October 6, 2016, System Board of Adjustment Opinion and Award in the matter of grievance SWA-3670 "Respiratory Protection Program" by Arbitrator Elizabeth Neumeier.

VII)   An order awarding to AMFA the costs and reasonable attorney's fees of this action;

VIII)  Any other relief as this Court may determine is just and proper.

## VII. JURY TRIAL DEMANDED.

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a trial by jury of all issues so triable by jury.

1

2

RESPECTFULLY SUBMITTED this 21st day of February, 2017,

3

LUBIN & ENOCH, P.C.
SEHAM, SEHAM, MELTZ & PETERSEN, LLP

4

5

*/s/ Nicholas J. Enoch*

6

Nicholas J. Enoch, Esq.
Attorneys for Plaintiff AMFA

7

8

**CERTIFICATE OF SERVICE**

9

10

I hereby certify that on the 21st day of February, 2017, I electronically transmitted the attached First Amended Complaint to the U.S. District Court's office using the CM/ECF System for filing.

11

12

/s/ Stacey L. Lucas

13

14

F:\Law Offices\client directory\AMFA\003\Pleadings\2017-2-21 (1886-003) First Amended Cpl.docx

15

16

17

18

19

20

21

22

23

24

25

26

27

28